USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/26/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York

                    Plaintiff,

-against-

EARLY WARNING SERVICES, LLC,

                    Defendant.

25-CV-07601 (MMG)

**AMENDED OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

## INTRODUCTION

The Office of the Attorney General ("OAG") filed this action against Defendant Early Warning Services, LLC ("EWS") in state court under New York Executive Law § 63(12), alleging that EWS created a platform conducive to fraud and fraudulently represented to consumers the platform was secure despite knowing of its vulnerabilities. EWS removed the action to this Court, arguing that the action raises embedded questions of federal law and thus "arises under" federal law per 28 U.S.C. § 1331. Before the Court now is the OAG's motion to remand this matter back to the state court. Because this action could be resolved without reference to, discussion, or analysis of federal law, the Court will GRANT the motion and REMAND this matter back to the state court.

1

## RELEVANT FACTS AND PROCEDURAL HISTORY[1]

Plaintiff is the People of New York as represented by the New York State Office of the Attorney General (the "OAG"). Defendant is Early Warning Services, LLC ("EWS"), which operates the popular, person-to-person payment platform Zelle. *See* Compl. ¶¶ 2–3, 15. Pre-dating this action, the Consumer Financial Protection Bureau (the "CFPB") brought an action involving Zelle in the District Court for the District of Arizona (the "CFPB Action"). *See* Dkt No. 1-5. The CFPB alleged that defendants in that case failed to implement certain anti-fraud measures concerning Zelle in violation of the Consumer Financial Protection Act (the "CFPA") and failed to reimburse consumers for fraudulently induced transactions made over Zelle in violation of the Electronic Funds Transfer Act (the "EFTA"). *Id.* at 78–85. The CFPB ultimately dismissed that action on March 5, 2025. *See CFPB v. Early Warning Servs.*, No. 2:24-cv-03652, slip op. at 1 (D. Ariz. Mar. 5, 2025). Not long thereafter, on August 12, 2025, the OAG commenced this action against EWS under New York Executive Law § 63(12) in New York state court (the "New York Action"). *See* Compl. The Complaint alleged that EWS failed to implement basic anti-fraud measures, rendering Zelle insecure and conducive to fraud. Compl. ¶ 155. Additionally, it alleged that EWS falsely represented to consumers that Zelle was a secure platform despite knowing that the platform suffered from numerous security flaws and was plagued by fraudulent transactions. *Id.*

On September 12, 2025, EWS removed the action to this Court. Dkt. No. 1. EWS argued that the New York Action is simply a redo of the federal CFPB Action styled as a state

---

[1] The following facts are taken from the Notice of Removal (Dkt. No. 1) and the OAG's complaint (referred to as the "Complaint" in text and "Compl." in citations) (Dkt. No. 1-6). The Court shall refer to the parties' memoranda of law in support of and opposition to the motion to remand as follows: Dkt. No. 14 ("Mot."); Dkt. No. 28 ("Opp."); and Dkt. No. 29 ("Reply").

2

law action and, accordingly, presents embedded questions of federal law. *Id.* ¶¶ 9–11; *see also* Opp. at 1, 8. As support, EWS invoked statements by the New York Attorney General that the OAG decided to file the New York Action after the CFPB "abandoned a similar lawsuit" and highlighted similarities between the complaint in this action and the complaint in the CFPB Action. Dkt. No. 1 ¶¶ 9–11. EWS also argued that the so-called artful-pleading rule applied and furnished a basis for this Court's jurisdiction. *Id.* ¶¶ 11–13. The OAG moved to remand the action on September 26, 2025 (the "Motion"). *See* Dkt. No. 14. The Motion was fully briefed as of October 16, 2025. *See* Dkt. Nos. 28 & 29.

## DISCUSSION

Resolving this dispute requires the Court to determine whether the OAG's claim necessarily raises a claim of federal law such that the Court has federal question jurisdiction over this case. Because EWS has failed to show that the OAG's claim necessarily turns on a question of federal law, the Court will grant the Motion and remand this matter back to state court.

### I. STANDARD OF REVIEW

28 U.S.C. § 1441 permits a defendant to remove to a district court "any civil action brought in a state court of which the district courts of the United States have original jurisdiction." In a dispute concerning removal, comity interests and respect for the state court requires a district court "to resolve any doubts against removability." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).[2] Similarly, "[s]tatutory procedures for removal are to be strictly construed." *Syngenta Crop Prot. Inc. v. Henson*, 537 U.S. 28, 32 (2002).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

## II. VINDICATION OF THE OAG'S CLAIM DOES NOT TURN ON A QUESTION OF FEDERAL LAW, THEREFORE THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION

EWS contends that the Court has jurisdiction over this case because the OAG's Complaint includes embedded questions of federal law. *See* Opp. at 5–10. Section 1331 vests federal courts with subject matter jurisdiction over actions that arise under federal law. *See* 28 U.S.C. § 1331. A court determines whether an action arises under federal law by applying the well-pleaded complaint rule, which "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 387, 392 (1987). The well-pleaded complaint rule, however, admits of three exceptions, when: (1) Congress has provided by statute for removal of state-law claims; (2) federal law completely preempts state-law claims; and (3) "the vindication of a state[-]law right necessarily turns on a question of federal law." *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014). Neither party disputes that the OAG's Complaint does not fall within the well-pleaded complaint rule. Moreover, EWS does not seriously contest that the first two exceptions to the well-pleaded complaint rule do not apply to this case.[3] Accordingly, removal of this action was proper only if the third exception applies, *i.e.*, if vindication of the OAG's claim necessarily turns on a question of federal law.

The third exception to the well-pleaded complaint rule is "extremely rare" and applies only if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and

---

[3] EWS argued in its notice of removal, and fleetingly in its opposition, that the so-called "artful-pleading rule" applies to this case. *See* Dkt. No. 1 ¶¶ 11–13; Opp. at 6–7. The Second Circuit has clarified that artful-pleading rule merely encompasses the first two exceptions to the well-pleaded complaint rule (where Congress has provided by statute for removal of state-law claims and federal law completely preempts state-law claims). *See Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010); *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 133 (2d Cir. 2023). Because EWS does not argue that either of those exceptions apply to this case (and because those exceptions clearly do not apply), the Court examines the applicability of the third exception, only.

(4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (the "*Gunn* Elements"). The current action falls outside the exception because a federal issue is neither "necessarily raised" nor "actually disputed."[4] The Court therefore lacks subject matter jurisdiction over the case and must remand it to the state court.

### A. Because a Court Could Resolve This Case Without Reaching a Federal Issue, a Federal Issue Is Not "Necessarily Raised"

The first *Gunn* Element is that a federal issue is necessarily raised. To be necessarily raised, a pertinent question of federal law must comprise a "necessary element of one of the well-pleaded state claims." *State by Tong v. Exxon Mobil Corp.* ("*Tong*"), 83 F.4th 122, 140 (2d Cir. 2023) (quoting *City of Rome v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 176 (2d Cir. 2004)). Accordingly, a federal issue is not "necessarily raised" if a "court could resolve the case without reaching the federal issues." *Id.* (quoting *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 140–41 (2d Cir. 2012)). Here, to show that the OAG's complaint necessarily raises a federal issue, EWS needed to point to a "necessary element" of proving liability under the OAG's claim that "could not be resolved without applying" a federal law. *Id.* EWS has not done so.

EWS contends that resolving the OAG's claim will necessarily require a court to determine "(1) whether EFTA requires reimbursing consumers for fraudulently induced transaction and (2) whether the CFPA requires taking additional steps to prevent third-party fraud." Opp. at 8. The Court fails to see how this is true. The Complaint alleges a single count of violating New York Executive Law § 63(12). That law empowers the New York Attorney General to sue a person or entity "engag[ing] in repeated fraudulent or illegal acts" or

---

[4] The Court takes no position on whether the present case meets the latter two *Gunn* Elements.

5

"demonstrat[ing] persistent fraud or illegality in the carrying on, conducting or transaction of business." N.Y. Exec. L. § 63(12). Based on its plain text, the executive law embraces "two strains" of liability. *New York by James v. Citibank, N.A.*, 763 F. Supp. 3d 496, 535 (S.D.N.Y. 2024). First, fraud liability, which the OAG may prove by, for example, showing scienter and reliance. *Id.*; *see also Matter of People v. Northern Leasing Sys., Inc.*, 193 A.D.3d 67, 75 (App. Div. 1st Dept. 2021) ("Under Executive Law § 63(12), the test for fraud is whether the targeted act has the capacity or tendency to deceive or creates an atmosphere conducive to fraud."). And second, liability for illegal acts, which requires the OAG to prove a predicate violation of another law. *See Nat'l Coal. on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 132 (S.D.N.Y. 2023); *New York by James v. Sirius XM Radio Inc.*, 735 F. Supp. 3d 272, 277 (S.D.N.Y. 2024).

The present case involves the first strain of liability because the Complaint alleges fraud in violation of the Executive Law itself, not in violation of another law.[5] Accordingly, the OAG does not have to prove that EWS violated either the CFPA or EFTA to succeed on its claim. Instead, the OAG need only prove that EWS knowingly created an environment susceptible to fraud—as the OAG contends EWS did when it created Zelle—regardless of whether any specific federal laws or regulations were violated. Compl. ¶¶ 46–47, 49, 82–102 (alleging that EWS created Zelle and Zelle was conducive to fraud); *see Northern Leasing Sys., Inc.*, 193 A.D.3d at 75 (reasoning that the creation of an atmosphere conducive to fraud is actionable under New York Executive Law § 63(12)). Alternatively, the OAG can show that EWS knowingly represented to consumers that Zelle was secure and safe to use despite knowledge that Zelle was, in fact, susceptible to fraud and rife with security risks, and that consumers relied on that

---

[5] If the OAG's case involved the second strain and relied on a violation of federal law as the predicate violation, it would of course meet the first *Gunn* Element. *See New York by James v. Sirius XM Radio Inc.*, 735 F. Supp. 3d 272, 277 (S.D.N.Y. 2024). This case does not present that issue.

representation. *See Citibank, N.A.*, 763 F. Supp. 3d 496 at 537. The OAG could prevail on either theory although neither would require the OAG to address issues of federal law. Accordingly, a federal issue is not "necessarily raised" in this case.

In its opposition, EWS does not point to any element of the OAG's claim that would necessarily turn on federal law. Instead, EWS makes the leap that the Complaint "envisions a world" in which EWS was required to implement anti-fraud measures and reimburse consumers for fraudulently induced transactions and, leaping further still, that the Complaint will accordingly require a court to examine the CFPA and EFTA. *See* Opp. at 8. Neither contention withstands scrutiny. First, the Complaint does not allege that EWS needed to reimburse consumers for fraudulently induced transactions. At most, the Complaint alleges that EWS' practice of not reimbursing consumers for fraudulently induced transactions is relevant to the extent that it shows EWS's representations to consumers about security were fraudulent. *See* Compl. ¶ 155. Second, even if the complaint did "envision a world" wherein EWS needed to implement anti-fraud measures or reimburse consumers for fraudulently induced transactions, EWS ignores that those requirements could derive entirely from state law.

### B. A Federal Issue Is Not "Actually Disputed" Because the OAG Takes No Position on the Federal Issues that EWS Invokes

Additionally, EWS fails to meet the second *Gunn* Element that a federal issue is "actually disputed." *Gunn*, 568 U.S. at 258. This requirement is met if the parties have a "dispute respecting the effect of federal law." *Id.* at 259. The OAG represents that it takes no position on whether the EFTA requires reimbursement for fraudulently induced transaction or the CFPA requires a company to implement anti-fraud measures. Mem. at 18–19. Although the Court does not rely entirely on the OAG's representation in determining if the second *Gunn* Element is met,

the Court credits the OAG's representation given that, as discussed above, the OAG can succeed on its claim without addressing what the EFTA or the CFPA require.

In opposition, EWS argues that—despite OAG's representations to the contrary—OAG in fact does dispute what the EFTA and CFPA require because the OAG modeled its complaint after the complaint in the CFPB Action and filed suit only after the CFPB Action ceased. Opp. at 10–11. This argument fails because similarities between the factual allegations in the complaints does not establish that the OAG has wholesale adopted the theory of liability in the CFPB Action. That the OAG brought its action after the CFPB dismissed the federal action does not mean the OAG is proceeding under the same legal theories as the CFPB. Instead, it simply reflects common sense notions of pragmatism and economy. Furthermore, the OAG could easily have adopted the CFPB's legal theories because New York Executive Law § 63(12) permits the OAG to sue to challenge an "illegal act," which includes a violation of federal law. *See* N.Y. Exec. L. § 63(12); *Nat'l Coal. On Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 132 (S.D.N.Y. 2023) (explaining that "any conduct which violates state or federal law is actionable" under § 63(12)). The OAG opted not to do so, and the Court cannot read legal theories into complaints where they are not presented, solely to create federal jurisdiction.

Finally, EWS contends that the OAG styled its complaint specifically to evade federal jurisdiction. Dkt. No. 1 ¶ 10. Whether EWS is correct is of no moment. As plaintiff, OAG is the "master of [its] complaint." *Viacom Internat'l., Inc. v. Kearney*, 212 F.3d 721, 727 (2d Cir. 2000). It was thus free to draft its complaint to avoid raising issues of federal law. Our federalist system does not demand otherwise.

## CONCLUSION

For the foregoing reasons, and the reasons expressed in the OAG's memoranda, the motion to remand is GRANTED, it is hereby ORDERED that this matter be remanded to New York state court, and all other pending motions are DENIED AS MOOT.[6]

Dated: February 26, 2026
New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge

---

[6] The removal statute permits the Court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447. In its discretion, the Court will not order any payment of just costs or actual expenses.